UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA J. BLACKSHEAR,

    Debtor,
_____/

DAVID WM. RUSKIN,

    Appellant,

v.

BRENDA J. BLACKSHEAR,

    Appellee.
_____/

Civil Action No. 14-14399
Honorable Patrick J. Duggan

Bankruptcy No. 14-43656
Honorable Marci B. McIvor

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER CONFIRMING DEBTOR'S SECOND AMENDED CHAPTER 13 PLAN

### I. INTRODUCTION

Appellant David Wm. Ruskin, the Chapter 13 bankruptcy trustee, appeals the order of the Bankruptcy Court for the Eastern District of Michigan confirming the second amended Chapter 13 bankruptcy plan of Brenda J. Blackshear, the Appellee and debtor in this case. The trustee claims that the plan should not have been confirmed because Blackshear failed to satisfy three particular conditions of

confirmation codified at 11 U.S.C. § 1325, the Bankruptcy Code provision governing confirmation of Chapter 13 plans.

The matter is fully briefed. Upon review of the record and briefs on appeal, the Court concludes that oral argument would not aid the decisional process. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court will affirm the Bankruptcy Court's order confirming Blackshear's second amended plan.

## II. BACKGROUND

Blackshear filed her Chapter 13 bankruptcy petition on March 7, 2014. The petition was filed on behalf of herself only; her husband did not join the petition. Blackshear and her husband live together and are not separated.

Together with her Chapter 13 petition, Blackshear filed a "Schedule I," a form used to calculate monthly income, a "Schedule J," a form used to calculate monthly expenses, and a Form B22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. The Schedule I and Schedule J were later amended.

On her amended Schedule I, Blackshear indicated that her net monthly income is $4,406. Blackshear also indicated that her husband's net monthly income is "0.00," even though the amended Schedule I also reflects that her husband was then employed as a bus driver with the City of Detroit. Although the husband's income is not reflected on the amended Schedule I, Blackshear wrote on

Form B22C that her husband's average gross monthly income during the six-month period preceding the filing of Blackshear's bankruptcy petition is $1,995 and furnished to the trustee pay stubs for the husband's position as a bus driver. In addition, Blackshear indicated on the amended Schedule I that her husband "contributes approximately $600 per month to the household expenses."[1]

On her amended Schedule J, Blackshear indicated that her monthly expenses are $2,780, resulting in a monthly surplus after expenses of $1,626 (i.e., $4,406 minus $2,780). Blackshear's second amended Chapter 13 plan, which was confirmed by the Bankruptcy Court over the trustee's objection after a hearing on September 25, 2014, calls for monthly plan payments of $1,650 for a period of sixty months.[2]

The trustee appeals the Bankruptcy Court's order confirming the second amended Chapter 13 plan. The matter is now fully briefed and ready for decision.

### III. ANALYSIS

The requirements for confirmation of a proposed plan under Chapter 13 of the Bankruptcy Code are set forth in 11 U.S.C. § 1325. *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 462 (6th Cir. 2009). Blackshear bears "the ultimate

---

[1] Blackshear's net monthly income of $4,406 includes the $600 monthly contribution received from her husband.

[2] The reasoning underlying the Bankruptcy Court's decision to confirm Blackshear's plan is better understood in the context of the legal issues raised and is thus discussed below.

3

burden of proof to show the requirements of 11 U.S.C. § 1325 have been met," *In re Lofty*, 437 B.R. 578, 584 (Bankr. S.D. Ohio 2010), a burden that the trustee contends is not satisfied here.

Specifically, the trustee argues that Blackshear failed to satisfy three particular requirements for confirmation. First, the trustee argues that Blackshear has not shown that all of her disposable income will be allocated to plan payments. *See* 11 U.S.C. § 1325(b)(1). Under § 1325(b)(1), "[i]f the trustee . . . objects to the confirmation of [a Chapter 13] plan," as the trustee here has done, "then the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."

Second, the trustee argues that Blackshear has not shown that "the plan has been proposed in good faith," 11 U.S.C. § 1325(a)(3), a determination "requir[ing] an inquiry into all the facts and circumstances of a debtor's proposed plan." *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988).

Finally, the trustee argues that Blackshear has not satisfied the "feasibility" requirement of 11 U.S.C. § 1325(a)(6), requiring a showing that she "will be able to make all payments under the plan and to comply with the plan," 11 U.S.C. § 1325(a)(6), or, stated differently, "that it is likely that [she] will have the necessary

4

resources to make all payments as directed by the plan." *In re Fantasia*, 211 B.R. 420, 423 (1st Cir. BAP 1997).

For the reasons that follow, the Court rejects the trustee's argument that Blackshear failed to satisfy these confirmation requirements and affirms the Bankruptcy Court's confirmation order.

As the trustee objected to the confirmation of Blackshear's second amended Chapter 13 plan, the Bankruptcy Court could not confirm the plan unless satisfied that Blackshear is committing all of her disposable income to plan payments. 11 U.S.C. § 1325(b)(1). "Disposable income" is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" for certain approved items. *Id.* § 1325(b)(2), (3). "Current monthly income," in turn, is defined as "the average monthly income from all sources that the debtor receives" in the six-month period preceding the bankruptcy filing, "includ[ing] any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents." *Id.* § 101(10A). Current monthly income, then, includes "[c]ontributions to household expenses by a nonfiling spouse." *In re Rodgers*, No. 14-41824-13, 2014 WL 4988388, at *1 (Bankr. W.D. Mo. Oct. 7, 2014). Therefore, to calculate the disposable income of a married debtor living with a non-filing spouse, a court must know whether the

debtor's non-filing spouse regularly contributes to the debtor's household expenses and, if so, the amount of such contributions.

Here, the Bankruptcy Court knew that Blackshear's husband contributed $600 per month to Blackshear's household expenses, as Blackshear disclosed this information on her Schedule I. Thus, the Bankruptcy Court had the information it needed about the finances of Blackshear's husband to calculate Blackshear's disposable income. *See* 8 Collier on Bankruptcy ¶ 1325.11[4][b] p. 1325-60 (16th ed. 2015) ("The definition [of disposable income] . . . makes clear that the income of other household members, including a nondebtor spouse, can be considered *only to the extent* that it is regularly contributed to household expenses of the debtor and the debtor's dependents." (emphasis added)); *In re Quarterman*, 342 B.R. 647, 651 (Bankr. M.D. Fla. 2006) ("[C]urrent monthly income does not include *all* the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses." (emphasis in original)).

However, the trustee argues that without additional information about the husband's finances – namely, his income and expenses – the Bankruptcy Court had no way of knowing that the husband is contributing to household expenses in an appropriate amount. Whether the husband is contributing to household expenses in an appropriate amount impacts whether Blackshear is devoting all of her disposable income to plan payments, as required by § 1325(b)(1), and whether the

6

plan was proposed in good faith, as required by § 1325(a)(3). This is because (1) without knowing the husband's income and expenses, and thus how much money he has remaining after paying his own expenses, it is impossible to assess whether $600 per month is too much or too little for him to be paying in household expenses; (2) whether Blackshear's husband is contributing an appropriate amount to household expenses bears on whether Blackshear is committing all of her disposable income to plan payments because (a) the more her husband contributes to household expenses, the greater Blackshear's current monthly income, as current monthly income includes amounts paid by a non-filing spouse on a regular basis for the household expenses; (b) the greater Blackshear's current monthly income, the greater her disposable income; and (c) the greater Blackshear's disposable income, the more money she can devote to plan payments. In other words, as one court has put it, "without . . . information as to [the non-filing spouse's] income and expenses, it is impossible to tell whether the [d]ebtor is, in effect, subsidizing [the non-filing spouse's] expenses at the expense of [the debtor's] unsecured creditors." *In re Rodgers*, 2014 WL 4988388, at *3.

The trustee also argues that without knowing the income and expenses of Blackshear's husband, the Bankruptcy Court could not determine whether Blackshear's proposed second amended Chapter 13 plan is feasible, as required by § 1325(a)(6), because without knowing how much the husband can afford to pay in

7

household expenses, the Bankruptcy Court and Blackshear cannot be sufficiently sure that Blackshear can count on receiving a $600 contribution every month from her husband; if Blackshear does not receive a monthly contribution from her husband in the anticipated amount of $600, she may not have enough money to satisfy her obligation under the plan.

There is case law supporting the trustee's position that knowing the non-filing spouse's income and expenses is necessary to determine both whether the debtor is devoting all disposable income to plan payments under § 1325(b)(1), and whether the plan is proposed in good faith under § 1325(a)(3). For example, the Chapter 13 debtor in *Rodgers*, the principle case on which the trustee relies, lived with his non-filing wife, who earned an estimated $60,000 to $70,000 per year and contributed "some funds" to the running of the household. 2014 WL 4988388, at *1. However, because the spouse "want[ed] no involvement whatsoever in the [d]ebtor's bankruptcy case and refuse[d] to cooperate in providing the Trustee with information about her financial circumstances," the debtor listed no income attributable to his wife on the Schedule I, nor did the debtor indicate how much his spouse contributed to household expenses, prompting the trustee to object to confirmation of the plan. *Id.*

The bankruptcy court sustained the trustee's objection and granted the trustee's motion to deny confirmation, holding that "a Plan . . . cannot be approved

without disclosure of regular contributions to the household by a non-debtor." *Id.* at *2. The court reasoned that because "§ 1325(b) requires a Chapter 13 debtor to devote all 'current monthly income' to plan payments," and because "'current monthly income' expressly includes 'any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents,' . . . . there is no way of knowing whether [the debtor] is contributing all 'current monthly income' to the Plan" " without knowing what [the non-filing spouse] contributes to the household . . . expenses." *Id.* The court also held that it could not determine whether the plan was proposed in good faith because "without . . . information as to [the non-filing spouse's] income and expenses, it is impossible to tell whether the [d]ebtor is, in effect, subsidizing [the non-filing spouse's] expenses at the expense of [the debtor's] unsecured creditors." *Id.* at *3. Thus, the court wrote that "disclosure of a nonfiling spouse's income is not 'voluntary.'" *Id.* at *2.

The bankruptcy courts in *In re Cardillo*, 170 B.R. 490 (Bankr. D.N.H. 1994), and *In re Kuhns*, No. 11-31518, 2011 WL 4713225 (Bankr. N.D. Ohio Oct. 7, 2011), two additional cases on which the trustee relies, reached the same conclusion on facts similar to those in *Rodgers*. The court in *Cardillo* denied confirmation of a Chapter 13 plan, concluding that the debtor's failure to disclose the income and expenses of his non-filing spouse precluded both a determination

9

under § 1325(b)(1) that the debtor was devoting all of his income to plan payments, and a determination under § 1325(a)(3) that the plan was proposed in good faith. In so holding, the court wrote that "a non-debtor spouse's income and expenses are to be taken into consideration when determining whether all of the debtor's disposable income is being applied to the plan." 170 B.R. at 492.

Similarly, in *Kuhns*, the court dismissed the debtor's Chapter 7 case because the debtor failed to disclose his non-filing wife's income and the amount she contributed to household expenses. 2011 WL 4713225, at *3. The debtor testified that he did not know his wife's income or the amount she contributed to household expenses, although the debtor knew that his wife was employed and paid some of the household expenses, because his wife refused to share this information with him. *Id.* at *1-2. Nevertheless, the bankruptcy court dismissed the case, holding that "while it may not be necessary for a non-filing spouse's income in excess of that paid on a regular basis for the household expenses of a debtor and the debtor's dependents to be applied to pay the debtor's creditors, the spouse's income information is necessary" to determine whether a Chapter 7 case is abusive under the code provision governing dismissal and conversion of Chapter 7 cases. *Id.* at *3.

The factual circumstances of *Rodgers*, *Cardillo*, and *Kuhns* are similar to, but not exactly the same as, those in the present case. The crucial difference

between the present case and the three cases on which the trustee relies is that the Bankruptcy Court in the present case had more information regarding the financial circumstances of the non-filing spouse than did the courts in the other three cases. First, the Bankruptcy Court here knew the amount that Blackshear's husband contributed to household expenses, as Blackshear disclosed that information on her Schedule I. Conversely, the bankruptcy courts in *Rodgers*, *Cardillo*, and *Kuhns* did not know the amount of the non-filing spouses' contributions to household expenses, as that information was undisclosed.

Second and of equal importance, the Bankruptcy Court in the present case, unlike the courts in the other cases, had a sense for the amount of monthly income earned by the non-filing spouse in the months preceding the debtor's filing. Blackshear's counsel indicated during the hearing before the Bankruptcy Court on September 25, 2014 that pay stubs in connection with the husband's job as a bus driver for the City of Detroit were furnished to the trustee, and offered to furnish additional pay stubs.[3] In addition, although Blackshear did not disclose her husband's income on the Schedule I, she did disclose it on Form B22C. On that form, Blackshear indicated that her husband's average gross monthly income during the six-month period preceding the filing of the bankruptcy petition was

---

[3] Counsel also informed the Bankruptcy Court that the pay stubs reflected that the husband's wages were subject to active garnishment, that "[h]e's got his own creditors attacking him," and that he was not "living a lavish lifestyle or . . . squirreling away all this money to deal with things. 9/25/14 Hr'g at 4, 6.

11

$1,995.46. Of that amount, Blackshear disclosed on her Schedule I that her husband was contributing approximately $600 to household expenses, leaving approximately $1,400 unaccounted for. Blackshear's counsel represented to the Bankruptcy Court at the September 25 hearing that although he "can't explain where [the excess] money goes" due to "[t]he inability [of the husband] to even describe to me what his expenses were," "what became apparent was that he contributes . . . at most on average $600 in any given month" to household expenses and that, regardless of how his remaining income was being spent, if at all, "[Blackshear] wasn't receiving the benefit of it." 9/25/14 Hr'g at 5-6 (ECF No. 10).

In sum, the Bankruptcy Court knew how much Blackshear's husband was contributing per month to household expenses, and it also had a sense of his monthly income. Conversely, in *Rodgers*, *Cardillo*, and *Kuhns*, this critical information about the finances of the non-filing spouses was undisclosed and unknown, making it impossible for the bankruptcy courts in those cases to calculate the disposable income of the respective debtors and to determine whether the plans in those cases were proposed in good faith. Thus, in the present case, significantly less information about the finances of the non-filing spouse was unknown to the Bankruptcy Court. The only pertinent information about the finances of Blackshear's husband that was unknown to the Bankruptcy Court was

12

what the husband was doing with the portion of his monthly income – approximately $1,400 – that he was not contributing to household expenses. At the September 25, 2014 hearing, the Bankruptcy Court explored this issue with counsel and accepted Blackshear's position that she was not benefiting from the unaccounted-for portion of her husband's income. The Bankruptcy Court concluded that "even if [Blackshear's husband] had a lavish lifestyle, there's nothing that [the court] can do . . . if it's not benefiting [Blackshear]" because "there's nothing [the court] can do to compel [Blackshear's husband] to contribute [more money] to [Blackshear's] plan." 9/25/14 Hr'g at 7. The Bankruptcy Court also noted that no creditors had objected to confirmation of the plan and that "even if [Blackshear's] husband should contribute a few more dollars, there's no way to compel him to do so." *Id.* at 12. Finding that "th[e] plan is in the best interests of all creditors" and that Blackshear "is contributing the maximum amount she could" to plan payments, the Bankruptcy Court overruled the trustee's objection and confirmed the plan. 9/25/14 Hr'g at 12.

The Court will affirm the Bankruptcy Court's order confirming Blackshear's Chapter 13 plan. The factual differences between the present case and the cases on which the trustee relies render those cases inapplicable here. Although the Bankruptcy Court did not have a complete picture of the finances of Blackshear's husband, it had enough information about his financial situation to

13

calculate Blackshear's disposable income and conclude that Blackshear was devoting all of that income to plan payments, that the plan was proposed in good faith, and that the plan is feasible.

The good faith determination "requires an inquiry into all the facts and circumstances of a debtor's proposed plan," *In re Okoreeh-Baah*, 836 F.2d at 1033, and a plan lacks good faith "[o]nly if there has been a showing of serious debtor misconduct or abuse." 8 Collier on Bankruptcy ¶ 1325.04[1] p. 1325-17. Considering the totality of circumstances here, the present record contains ample support for the Bankruptcy Court's implicit conclusion that the plan was proposed in good faith, and its conclusion is entitled to deference on review. *See id.* at 1325-18 ("Because the determination regarding good faith is fact-intensive, it is usually not reversible on appeal unless it is clearly erroneous or based on an error of law.").

The same goes for the Bankruptcy Court's implicit conclusion that the plan is feasible. "The bankruptcy court may refuse to confirm a chapter 13 plan if the court finds that the debtor will be unable to make all payments under the plan." *Id.* ¶ 1325.07[1] p. 1325-48. "Thus, when a debtor's budget shows a clear inability to make the proposed plan payments, the plan is not entitled to confirmation." *Id.* Here, the Bankruptcy Court was satisfied based on all the information before it that Blackshear would continue receiving a monthly contribution of $600 from her

husband; there is nothing in the record suggesting a "clear inability" of the husband to contribute to household expenses in the designated amount of $600, and there is thus nothing to suggest that Blackshear will falter on her plan payments because of her husband's failure to contribute. The Bankruptcy Court's conclusion on feasibility is entitled to deference on review and will not be disturbed. *See id.* at 1325-49 ("The determination of feasibility must be done on a case by case basis and is not subject to per se rules. Ordinarily, the bankruptcy court's findings on feasibility should be given considerable deference." (footnotes omitted)).

## IV. CONCLUSION

For the reasons stated, the order of the Bankruptcy Court confirming Blackshear's second amended Chapter 13 plan is **AFFIRMED**.


Dated: May 20, 2015                    s/PATRICK J. DUGGAN
                                       UNITED STATES DISTRICT JUDGE


Copies to:

Thomas D. DeCarlo, Esq.
Christopher M. Carey, Esq.
Dario D. Ianni, Esq.
Michael P. Hogan, Esq.